Good morning, Your Honors. Good morning. My name is Christopher Cannon. I'm here with Matthew Laws. We represent Saleem Khan. Your Honor, this is a case about the reconveyance of a deed of trust and statements that were made to secure that reconveyance. It's not a case about a fraudulent application or a fraudulent receipt of funds. It's a case solely about the reconveyance of a deed of trust after the deed of trust had already been written down. When you're dealing with both the issues of loss and the issue of restitution in this case. Counsel, I want to be clear. It was written down after your client made the false statements? It was written, there was one phone call between my client and the bank prior to the write-down. And there's no evidence in the record that that phone call had anything to do with the write-down. The evidence in the record, supplemental excerpt of record, page 93, is the decision to settle was based in part upon the false information provided by my client. So it's absolutely clear he made one false statement on a phone call prior to the write-down, but there's no evidence in the record that that led to the decision to write it down. With all respect, that's like being a little bit pregnant. But let me ask you this. Are you claiming this was a no-recourse loan? I'm not claiming it was a no-recourse loan, Your Honor. Then I would like you to address this problem. Before he makes the false statements, the bank have a loan, forget the collateral, have a loan that's worth $350,000. Because it is a loan at market interest against a solvent debtor. By a false statement, they give up that loan for $45,000. I think the value of the house here is a total red herring. He got a write-off. He got released from $350,000 of liability for which he was personally I see that as a major problem. I understand the courts, why the court could look at it that way. And that's why in my brief I talked a little bit about California real estate law. Because while there is recourse in California, there's also a you have to first proceed through foreclosure. So in order to get a deficiency judgment against Mr. Kahn, each bank would have had to foreclose. So to foreclose, they would have had to pay off the first. They would have then been in the position of putting out an additional $284,000. They would have then had to spend the legal fees to go through the foreclosure process. They then would have been able to foreclose, so they would have then owned the property that at that time was worth about $335,000. At that point, yes, they could have pursued a deficiency judgment, but it would have been a very expensive and time-consuming way to do it. That's why when this loan was originally issued, it was issued based upon the value of the property. Well, but wouldn't that be a choice for the bank to make, knowing that they had a solvent from somebody where they couldn't collect anything? I agree, but that's the decision that the bank made. And if you look at the time that the loan was written down, at the time the loan was written down, the bank didn't ask for any information from Mr. Kahn. The bank didn't ask what his assets were. They didn't ask anything. There was one brief phone call where he said that he was unemployed, and then the bank, on their own, unilaterally wrote down the loan. Did he not submit documents, false documents? He did later, several months after the loan was written down. And that doesn't count? No. I agree. He submitted false documents. But the question is, what did he submit the false documents to do? He submitted the false documents to obtain a reconveyance of the loan, which had already been written down. Did the bank induce the bank to reconvey the property on the belief that he wasn't able to pay it when he really was? That's completely true. But the question is, what's the value of the already written down deed of trust? Because the bank gave that deed of trust back when the property was worth $775,000. That's what the bank was looking to for the security. When the real estate market crashed, that deed of trust became worth much less. And that's what the government had to prove in this case, is what was the value of the deed of trust at the time Mr. Kahn gave the false information to get a reconveyance of the deed of trust. This isn't a case where he got the funds fraudulently. There's no allegation that he got the funds You don't want to pay the funds. You want to renegotiate. What's a crime is what he pled guilty to. Lying about his financial condition to try to induce them to forgive the loan. That's correct. And the loss in this case is what's the value of the loan? What's the value of the deed of trust? What's the value of an underwater deed of trust? And that's really the issue. I have no dispute that providing the false information regarding his assets influenced the bank's decision to write down the deed of trust. There's no dispute about that. The question is, what's that deed of trust worth at the time? That's really the issue. Because what's happened here is both the government and the district court are conflating the receipt of the funds, which was not criminal, with what's criminal, which is the false statement to get the reconveyance. So, and to determine what the loss is, you have to value the deed of trust at the time of the reconveyance. And it's our position the government didn't provide any evidence of the value of the deed of trust at the time of the reconveyance. And the bank's own documents indicated that they thought it was underwater, and they decided not to go forward. So we don't know what the value of that deed of trust was at the time. You've got about three minutes. Do you want to save it? I think I deserve it. Thank you. Thank you. For the government, please. Good morning. Good morning, Your Honors. May it please the Court, my name is Anne Voitz, and I represent the government. Could you pull the mic up a little bit? Thank you. The district court did not clearly err here in finding an amount of loss between $200,000 and $400,000 or in imposing restitution in the amount of $313,665 in restitution. Defendant's arguments to the contrary depend on counterfactual assumptions about the scope of defendant's scheme and what exactly this case is about. Defendant would have it that this case is about the reconveyance of a deed of trust and nothing more. But as Judge Garbus pointed out, this wasn't simply a case where the bank reconveyed title. They gave up their right to pursue the debt. And it's undisputed that at the time of his default, defendant owed over $346,000 on his debt. As the Court found, his loan was written off in part because of his failure to pay. But as the district court found, that failure to pay was part of the scheme. Defendant understood that they would never charge off the debt if he was continuing to make payments, and so the district court found that his failure to pay was part of the attempt to get the bank to settle the debt for significantly less than it was worth and far less than defendant was able to pay. There's no dispute again in the record that the decision to settle at all and for the amount that they did was based on defendant's false statements, both first in the phone call that this panel referenced where he misstated his income, and then in the bank in which he asserted that he had been unemployed for a significant period of time, in which he understated his assets, and which he asserted that this was his home and that without it he would not be able to have a home for his family. With respect to defendant's reference to the California state law, what defendant is trying to do here is to import civil limitations on remedies for loss to a criminal law assessment of what that loss is. And there's simply no support for that, either in assessing loss under the sentencing guidelines or in assessing loss under the MVRA, which calls for restitution to be made in the full amount of the victim's losses. Finally, with respect to the question of causation, defendant admitted himself that the bank would not have settled if they had known the truth. He did so in a statement to the FBI agent, and his counsel admitted as much as sentencing. And if I might respond finally to one last point that defense counsel made, he said that the district court and the government erroneously conflated the receipt of the funds with the defendant's subsequent criminal actions in settling, in providing false information that influenced the bank's decision to settle. And with all due respect, that's simply not true. In this case, defendant had borrowed $345,000, and he didn't pay it back. He had an obligation to pay it, and he got out of that obligation by providing false information on which the bank relied. If I could also address the point that he made about what the bank relied on. The bank relied, if you look at the documents, I believe it's ER-114 and SER-38. There's a handwritten note that noted decrease in income or decrease income, and then it said it should be charged based on the failure to pay, which, as I noted, was part of defendant's scheme to get the bank to settle. Finally, if I could address the defendant's case in Louise that he submitted in a 28-J yesterday. This is not a case, as the district court found, where this loan was bundled or sold for a fraction of its face value. When it was bought by E-Trade, it was bought at its face value plus a premium. And, in fact, defendant then paid off that and then ran off the balance of $346,000. Those were all funds that came from the victim in this case. Those are funds to which they are entitled in restitution, and they are funds that should be considered in determining the amount of loss. If the Court has no questions for me, I'd be happy to submit. Scalia. Yes. Is there any room here for looking at the defendant's gain as distinct from the loss in order to determine restitution? The defendant gained from his fraudulent actions to the extent of the difference between what he ultimately got and his $45,000. Is that – is there any validity to that? Certainly, under the sentencing guidelines, this Court is entitled to consider gain if loss cannot be – if the amount of loss cannot be determined. The defendant's position is that, in fact, there was no loss, not that it can't be determined. But, in fact, the district court did say, defendant had admitted in a statement submitted to the probation officer that appears in the PSR, I believe at paragraph 18, that he benefited from the illegal scheme in the amount of $299,850.  Is there any value to looking at this from an economic point of view? That is to say, here was a bargain. It was not a bargain between people with equal amounts of information. But the defendant decided that the value of this was the amount of loss that    something more than $45,000 because he was willing to pay $45,000. Is there any point you can make based upon that? I think that's an interesting question, Your Honor. I think it does sort of – the defense sort of posits a world in which we either consider that he defaulted the loan and wouldn't have provided false information or in which he defaulted and did, as he actually did here, provided false information to convince the bank to settle for significantly less. I think it's clear based on the record that the bank would not have settled either at all or certainly would have settled for significantly more. And it's certainly obvious also from the record that the defendant was capable of paying significantly more. The defense refers to the California real estate law, the cost of going through foreclosure and all that. Would that amount that would be cost would be recoverable from the defendant if the bank had to do that in addition to the deficiency? Yes, certainly under restitution it would be. But not for the guidelines, right? I'm sorry? You could account that, take that into account for restitution, but not for the guidelines. Correct. And in this case, in fact, it wasn't factored in in the amount of restitution, but defendant is attempting essentially to turn that on its head and to say that those costs, instead of being included in the amount of restitution, should be subtracted from it in thinking about both what the amount of loss was under sentencing guidelines and the amount of restitution ordered under the MVRA. Neither finds support in the case law. I'm not sure I understand you, but the – it's not that you would – let's assume it would cost $100,000 if they went through foreclosure. I'm not saying you add that to restitution. I'm saying that when you analyze the value of the loan, which has, as I said before, I'm not looking at the value of the collateral, then – and you have a perfectly solvent defendant, then if the bank foreclosed, knowing that this man was the multimillionaire that he is, they would pay the extra $100,000 to recover the $350,000. But that would be added to what the defendant would have to pay them. So they still lost a net of $350,000. That's correct, Your Honor. All right. Are there no further questions? Thank you. Mr. Cannon, you get the last word. You've got about three minutes left. Mr. Cannon. If the Court is interested in the economic analysis, I'd like to go to that first. And when you're looking at the economic analysis, the issue is what's the value of what was taken. And I'm hearing the Court. The Court is saying two things were taken. That's not the theory that the government proceeded on, but I'll address the Court's issue. What was taken was the reconveyance and the bank's right to pursue Mr. Kahn. And, yes, the bank had a right to pursue Mr. Kahn, but the bank independently decided through their own economic analysis that it would be too burdensome, too costly, and too time-consuming to pursue that. They could have gotten more information. They didn't get more information. You have to look at what's the value of the deed of trust in 2011 when these settlement negotiations happened. And at that point, it was no longer a secured note. It was simply an underwater note, and it wasn't worth it going through litigation. In California, it's not like some other states where it's easy to get a deficiency judgment. You have to pay off the first, you then own a piece of property in the declining market, and it just wasn't worth it. So that very severely undermines the value of the deed of trust at that time. The government's position in this case is as if I bought a car for $40,000 5 years ago, someone stole it from me yesterday, and I'm claiming my loss is $40,000. That's not true. The loss would be the depreciated value of the car. And in this case, the loan wasn't the value of the deed of trust was not the original face value of the deed of trust. It was what that deed of trust was worth being secured by a very depreciated piece of property. Thank you. Roberts. Thank you, Mr. Kahn. Ms. Boyd, thank you. The case just argued is submitted.
judges: Schroeder, Silverman, Garbis